[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14044
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00055-AKK-TMP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NAKEY DEMETRUIS WHITE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 21, 2016)

Before MARCUS, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant pled guilty to one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Based on his prior Alabama convictions for robbery, first-degree possession of marijuana, and trafficking in cocaine, Defendant was sentenced under the Armed Career Criminal Act ("ACCA") to serve 180 months in prison.  On appeal, Defendant argues that he should not have been sentenced under the ACCA because neither of his drug offenses is a valid ACCA predicate.  Because this argument is foreclosed by controlling precedent, Defendant's sentence must be affirmed.

## BACKGROUND

### I.    Factual Background

On September 18, 2013, officers from the Birmingham Police Department made a routine traffic stop having observed a seatbelt violation.  Defendant was in the front passenger seat of the car that was stopped.  The officers found a gun during the stop, and Defendant admitted the gun was his.  A record check indicated that the gun was stolen, and a criminal history check revealed an outstanding warrant for Defendant's arrest, as well as numerous prior felony convictions.

### II.    Procedural History

Defendant pled guilty to one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Citing Defendant's prior Alabama

convictions for first-degree possession of marijuana and trafficking in cocaine,[1] the

Presentence Report ("PSR") assigned Defendant a base offense level of 24 under

United States Sentencing Guidelines § 2K2.1(a)(2).  Two points were added

pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the gun found in Defendant's

possession was stolen, resulting in an adjusted offense level of 26.  Although

Defendant pled guilty, the PSR did not recommend a downward adjustment for

acceptance of responsibility because while on pretrial release, Defendant had been

arrested on a domestic violence charge and had also provided a urine sample that

reflected his use of a controlled substance.

The PSR further recommended that Defendant be sentenced as an armed

career criminal under the ACCA based on his prior violent felony and drug

convictions.  According to the PSR, Defendant's marijuana and cocaine trafficking

convictions qualified as serious drug offenses under the ACCA.  Defendant also

had a prior Alabama robbery conviction, which the PSR classified as a violent

felony.  Applying the ACCA enhancement, the PSR assigned Defendant a total

offense level of 33 pursuant to U.S.S.G. § 4B1.4(b)(3)(B), yielding a guidelines

range of 188 to 235 months and a mandatory minimum of 180 months in prison.

In written objections to the PSR, Defendant argued that a downward

---

[1]  Defendant had pled guilty to possession of marijuana "for other than personal use" in violation of Ala. Code § 13A-12-213 in 2005.  He had pled guilty to cocaine trafficking in violation of Ala. Code § 13A-12-231 in 2007.

3

adjustment for acceptance of responsibility was warranted, given his guilty plea

and his admission at the time of arrest to possessing the gun.  Defendant also

objected to the ACCA enhancement.  He conceded that his robbery conviction

qualified as a violent felony,[2] but argued that his marijuana and cocaine trafficking

convictions were not serious drug offenses as defined by the ACCA.  Specifically,

Defendant argued that both drug offenses were defined by Alabama law to cover

simple possession, and that neither of the offenses necessarily involved the

manufacture or distribution of, or the intent to manufacture or distribute, a

controlled substance, as required by the ACCA.

The district court sustained Defendant's objection in part as to the

acceptance of responsibility issue, applied a two-level reduction, and adjusted his

guidelines range accordingly.  Citing controlling precedent from this Court, the

district court overruled Defendant's ACCA objections and found that Defendant

had three qualifying predicates, including the robbery, first-degree possession of

marijuana, and cocaine trafficking convictions.  The court sentenced Defendant to

---

[2]  Defendant was convicted in 2001 of second degree robbery in violation of Ala. Code § 13A-8-42.  That statute defines second degree robbery to include the following elements:  (1) the commission of a theft, (2) during which the defendant "[u]ses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance" or "[t]hreatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property" and (3) while the defendant is "aided by another person actually present."  Ala. Code §§ 13A-8-42, 13A-8-43.  As noted, Defendant conceded below that his robbery conviction is an ACCA predicate.  He does not argue otherwise on appeal.  *See* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" to include crimes that have "as an element the use, attempted use, or threatened use of physical force against the person of another").

the mandatory minimum term of 180 months in prison, followed by five years of supervised release. Defendant argues on appeal that the district court should not have applied the ACCA enhancement because neither of his drug convictions qualified as a serious drug offense.

## DISCUSSION

### I.    Standard of Review

We review de novo whether a conviction qualifies as a serious drug offense under the ACCA. *United States v. Robinson*, 583 F.3d 1292, 1294 (11th Cir. 2009). In conducting our review, "we are bound to follow a prior binding precedent 'unless and until it is overruled by this court en banc or by the Supreme Court.'" *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quoting *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003)).

### II.    The ACCA

The ACCA mandates a 15-year minimum sentence for a defendant who has three prior convictions for a violent felony or a serious drug offense and who is convicted of violating 18 U.S.C. § 922(g). 18 U.S.C. § 924(e)(1). The term "serious drug offense" is defined by the ACCA to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of

5

imprisonment of ten years or more is prescribed by law."  18 U.S.C.

§ 924(e)(2)(A)(ii).

In determining whether a state conviction qualifies as a predicate under the

ACCA, we follow what is described as a "categorical approach."  *Robinson*, 583

F.3d at 1295.  Under this approach, we are concerned only with the fact of the

conviction and the statutory definition of the offense, rather than with the particular

facts of the defendant's crime.  *Id.*  As applied to this case, the categorical

approach requires us to determine whether first-degree possession of marijuana

and cocaine trafficking, as those crimes are defined by Alabama law, fall within

the definition of a serious drug offense set forth in the ACCA.  *See United States v.*

*Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014) (explaining that we look to the plain

language of the ACCA's definition of the term "serious drug offense" to determine

the elements of such an offense), *cert. denied*, 135 S. Ct. 2827 (2015).

When a statute covers some conduct that falls within, and other conduct that

is broader than, a predicate offense as defined by the ACCA and when that statute

is divisible,[3] we may use a modified categorical approach to determine whether a

defendant's prior conviction qualifies.  *See Descamps v. United States*, 133 S. Ct.

2276, 2281–82 (2013).  Under the modified categorical approach, we look to a

---

[3]  A divisible statute "sets out one or more elements of the offense in the alternative."  *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).  *See also Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (clarifying that a statute enumerating "various factual means of committing a single element" is not divisible).

limited class of documents, such as the indictment and jury instructions, to determine which alternative element was the basis of the defendant's conviction. *Id.* at 2281. We then consider whether that element is encompassed by the ACCA predicate offense. *Id.*

## III.    Defendant's Marijuana Conviction

Section 13A-12-213(a) of the Alabama Code provides that a person is guilty of first-degree possession of marijuana if:

> (1)    He or she possesses marihuana for other than personal use; or
>
> (2)    He or she possesses marihuana for his or her personal use only after having been previously convicted of unlawful possession of marihuana in the second degree or unlawful possession of marihuana for his or her personal use only.

Ala. Code § 13A-12-213(a).[4] It is undisputed that Defendant was convicted of first-degree possession of marijuana "for other than personal use" under § 13A-12-213(a)(1).[5] Defendant concedes that the conviction meets the ACCA's requirement that it be punishable by a maximum term of at least ten years.[6] But he

---

[4] The Alabama Code refers to marijuana as "marihuana" and "cannabis." *See* Ala. Code §§ 13A-12-213(a), 13A-12-231(1). We use the term "marijuana" except when directly quoting the code or Alabama case law.

[5] Of note, § 13A-12-213(a) is divisible in that it alternatively criminalizes (1) possession of marijuana for other than personal use and (2) possession of marijuana for personal use after a prior qualifying conviction. *See Descamps*, 133 S. Ct. at 2283–85. The second provision is not at issue here because the parties agree that Defendant was convicted under § 13A-12-213(a)(1).

[6] First-degree possession of marijuana for other than personal use is a Class C felony, which carries a maximum sentence of ten years and a minimum sentence of one year and one day. Ala. Code §§ 13A-12-213(b), 13A-5-6(a)(3).

argues that it is not a serious drug offense because the Alabama statute does not expressly require "manufacturing, distributing, or possessing with intent" to do either. *See* 18 U.S.C. § 924(e)(2)(A)(ii).

We rejected Defendant's argument in *United States v. Robinson*, 583 F.3d 1292, 1296–97 (11th Cir. 2009). As we explained in *Robinson*, possession of marijuana "for someone else's use" necessarily involves possession "with the intent to distribute" it to another person. *Id.* at 1296. *See also* 21 U.S.C. § 802(11) (defining the term "distribute" for purposes of federal drug laws to mean "deliver"). Consequently, we held that a conviction for possession of marijuana for other than personal use under § 13A-12-213(a)(1) qualifies as a serious drug offense under the ACCA. *Id.* at 1296–97.

Defendant argues that *Robinson* is wrong and that the conduct made criminal by § 13A-12-213(a)(1) falls outside of the ACCA's definition of a serious drug offense because, in theory, a person could violate the statute by jointly possessing marijuana with another person or by possessing it with intent to administer or dispense it, rather than with intent to distribute it. Defendant, however, does not explain why jointly possessing marijuana "for other than personal use" would not also necessarily involve an intent to distribute or deliver it to another person. As to his argument that an individual could violate the statute by possessing marijuana with intent to administer or dispense it, he does not cite any authority to suggest

8

that § 13A-12-213(a)(1) has ever been applied in this hypothetical situation. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013) ("[T]here must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007))); *United States v. Teran-Salas*, 767 F.3d 453, 460–62 (5th Cir. 2014) (rejecting a similar argument where the defendant failed to show a realistic probability that the statute at issue had been applied in an "administering" situation), *cert. denied*, 135 S. Ct. 1892 (2015). Rather, the case law indicates that our interpretation of § 13A-12-213(a)(1) in *Robinson* is consistent with that of the Alabama courts. *See McWhorter v. State*, 588 So. 2d 951, 954 (Ala. Crim. App. 1991) (reversing a defendant's conviction under § 13A-12-213(a)(1) where there was no evidence that his marijuana growing room was part of a distribution operation); *Harris v. State*, 594 So. 2d 725, 728–29 (Ala. Crim. App. 1992) (affirming a defendant's conviction under the statute where law enforcement found, among other evidence, 18 separate packets of marijuana hidden in an eyeglass case).

Defendant acknowledges that *Robinson* rejected his argument, but he asserts that *Robinson* is no longer controlling as a result of the Supreme Court's decision in *Descamps*. His argument is unpersuasive. Binding circuit precedent can only be overruled by a Supreme Court decision that is "clearly on point." *Garrett v.*

9

*Univ. of Ala. at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003). To meet that standard, the intervening Supreme Court decision must "actually abrogate or directly conflict with, as opposed to merely weaken," the prior panel's holding. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). Obviously, *Descamps* had no such impact on *Robinson*. The question before the Supreme Court in *Descamps* was whether the modified categorical approach applies when a state statute of conviction contains a "single, indivisible set of elements" that is broader than the generic version of an enumerated violent felony under the ACCA. *Descamps*, 133 S. Ct. at 2282. The Supreme Court held that it does not, but that holding has no bearing on our decision in *Robinson* that the possession of marijuana "for other than personal use" necessarily involves an intent to distribute, such that a conviction under § 13A-12-213(a)(1) is encompassed by the ACCA's definition of a serious drug offense. *See Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1230 (11th Cir. 2007) ("Obedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing.").

To repeat, because the prior precedent rule requires that we follow *Robinson* unless and until it is overruled by this Court en banc or by the Supreme Court,

*Robinson* clearly governs—and forecloses—this ground of Defendant's appeal.
*See Robinson*, 583 F.3d at 1295–96.

## IV.    Defendant's Cocaine Trafficking Conviction

Section 13A-12-231 of the Alabama Code prohibits trafficking in specified kinds of drugs.  Defendant was convicted of trafficking in cocaine, pursuant to § 13A-12-231(2).  This section provides that a person commits the offense of trafficking in cocaine if he "knowingly sells, manufactures, delivers, or brings into this state, or . . . is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine."  Conviction under this section carries a mandatory-minimum sentence of three years imprisonment.  *See* 13A-12-231(2)a.  The mandatory penalty under the statute increases as the quantity of cocaine increases.[7]

The above statute prohibiting drug trafficking is part of a three-tiered scheme for punishing drug offenses in Alabama that also includes:  (1) a statute which prohibits possession of any amount of a controlled substance other than marijuana (Ala. Code § 13A-12-212)[8] and (2) a statute prohibiting the unlawful

---

[7] *See* § 13A-12-231(2)b (mandatory-minimum sentence of five years for 500 grams or more, but less than one kilogram); § 13A-12-231(2)c (mandatory-minimum sentence of fifteen years for one kilogram but less than ten kilograms); § 13A-12-231(2)d (mandatory-minimum sentence of life imprisonment without parole for ten kilograms or more).

[8] The penalty for violation of this section, which is designated a Class D felony, is imprisonment of not more than 5 years or less than 1 year and 1 day.  Ala. Code §§ 13A-5-6(a)(4), 13A-12-212(b).  The statute was recently amended, as a violation of this statute was previously a Class C

11

distribution of or possession with intent to distribute a controlled substance other than marijuana (Ala. Code § 13A-12-211).[9]

As noted, the third leg of this three-tier statutory scheme is the statute prohibiting trafficking in a controlled substance, under which statute Defendant was convicted:  Ala. Code § 13A-12-231(2).  Trafficking is the most serious of these offenses.  *See* Ala. Code § 13A-12-231(13) (stating that trafficking in cocaine is a Class A felony) and Ala. Code § 13A-5-3(b)(1) (designating Class A felonies as the most serious offenses).  Notwithstanding its top ranking in the severity-pecking order of Alabama cocaine statutes, Defendant contends that trafficking in cocaine, as defined by § 13A-12-231(2), does not qualify as a serious drug offense under the ACCA because it does not necessarily involve "manufacturing, distributing, or possessing [a controlled substance] with intent" to do either.  *See* 18 U.S.C. § 924(e)(2)(A)(ii).

We rejected this same argument in *United States v. James*, 430 F.3d 1150 (11th Cir. 2005), *overruled on other grounds by Johnson v. United States*, 135 S.

---

felony, which provided for a sentence of imprisonment of not more than 10 years or less than 1 year and 1 day.  *See* S.B. 67, 2015 Reg. Sess. (Ala. 2015).

[9]  The penalty for violation of this section, which is designated a Class B felony, is imprisonment of not more than 20 years or less than 2 years.  Ala. Code §§ 13A-5-6(a)(2), 13A-12-211(d).

As to the prong of the statute prohibiting unlawful possession with the intent to distribute, § 13A-12-211(c)(1) provides that the statute is violated when a person knowingly possesses more than eight but less than 28 grams of cocaine or a cocaine mixture.

Ct. 2551 (2015).  The defendant in *James* had a prior conviction for trafficking by possession of between 200 and 400 grams of cocaine under a Florida statute that is nearly identical to Ala. Code § 13A-12-231(2), and that fits within a similar three-tiered statutory scheme defining trafficking as a more serious crime than either simple possession or possession with intent to distribute.[10]  *Id.* at 1152, 1154.  He argued, as Defendant does here, that the conviction did not qualify as a serious drug offense under the ACCA because it was based on simple possession of a specified amount of cocaine rather than a demonstrated intent to manufacture or distribute.  *Id.* at 1154.  We rejected that argument, holding that the Florida trafficking statute inferred intent to distribute based on the quantity possessed, and that the defendant's conviction under the statute thus fell within the ACCA's definition of a serious drug offense.  *Id.* at 1155–56.

The rationale underlying *James* originated in *United States v. Madera-Madera*, 333 F.3d 1228 (11th Cir. 2003).  The defendant in *Madera-Madera* had a prior conviction for trafficking by possession of 87 grams of methamphetamine under a materially indistinguishable Georgia trafficking statute that was part of a comparable three-tiered statutory scheme.  *Id.* at 1230-31.  We held that the conviction qualified as a drug trafficking offense under § 2L1.2(b)(1)(A)(i) of the

---

[10]  The Florida statute provides that a person commits the offense of trafficking if he "knowingly sells, purchases, manufactures, delivers, or brings into this state, or . . . is knowingly in actual or constructive possession of, 28 grams or more of cocaine."  Fla. Stat. § 893.135(1)(b)1.  Punishment under the statute depends on the quantity of cocaine involved.  *Id.*

13

Sentencing Guidelines. *Id.* at 1231.  For purposes of § 2L1.2, a "drug trafficking offense" is defined to include a state offense "that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."[11]  U.S.S.G. § 2L1.2, comment. (n.1(B)(iv)).  The defendant in *Madera-Madera* argued that his Georgia trafficking conviction did not fall within that definition because it was based on mere possession rather than a listed act such as possession with intent to distribute.  We rejected that argument, reasoning that "Georgia's trafficking statute necessarily infers an intent to distribute once a defendant possesses a certain amount of drugs." *Madera-Madera*, 333 F.3d at 1232.

As *Madera-Madera* further explained, Georgia's trafficking statute requires the possession of a significant quantity of drugs to support a conviction, and its three-tiered drug punishment scheme deems trafficking to be more serious than either simple possession or possession with intent to distribute.  *Id.* at 1231–32. Georgia law thus "recognizes that someone who is in possession of [the requisite quantity of drugs] . . . plans on distributing and thereby 'trafficking' those drugs." *Id.* at 1232.  Finally, *Madera-Madera* noted that if we do not likewise recognize

---

[11]  The Sentencing Commission amended § 2L1.2's Application Note 1(B)(iv) in 2008 by adding "offer to sell" to the definition of drug trafficking offense.  U.S.S.G. § 2L1.2, App. C, Amend. 722 (2008) ("[T]he amendment clarifies that an 'offer to sell' a controlled substance is a 'drug trafficking offense' for purposes of subsection (b)(1) of § 2L1.2 by adding 'offer to sell' to the conduct listed in Application Note 1(B)(iv).").

the inferred intent to distribute for purposes of the guidelines, an anomaly would result:  trafficking, the most serious drug crime under Georgia law, would not qualify for a sentencing enhancement, whereas the less serious crime of possession with intent to distribute would.  *Id.* at 1233–34.

When faced in *James* with the question whether a conviction under a nearly identical Florida trafficking statute qualified as a serious drug offense for purposes of an ACCA enhancement, we found no reason to distinguish or depart from *Madera-Madera*.  *James*, 430 F.3d at 1154.  Citing *Madera-Madera*, we held that an inference of intent to distribute was warranted by the significant quantity of drugs a defendant must possess to violate the trafficking statute and by Florida's three-tiered statutory scheme designating trafficking as more serious than either simple possession or possession with intent to distribute.  *Id.* at 1155.  And as in *Madera-Madera*, we noted the anomaly that would result from treating a Florida trafficking conviction more leniently under the ACCA than a Florida conviction for possession with intent to distribute.  *Id.*  "Such an anomalous result," we explained, "would thwart the ACCA's purpose."  *Id.*

As an additional ground for our holding in *James*, we relied on the ACCA's definition of a serious drug offense to broadly include "any offense *involving* the manufacture, distribution, or possession with intent to manufacture or distribute" drugs.  *Id.* (citing 18 U.S.C. § 924(e)(2)(A)(ii)) (emphasis added and quotation

15

marks omitted).  We found it clear from the ACCA's use of the term "involving" that the definition of a serious drug offense might include "state offenses that do not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute."  *James*, 430 F.3d at 1155.  As such, we were unpersuaded by the defendant's argument that the "language of the Florida statute need[s] [to] exactly match" the specific acts listed in the ACCA definition.  *Id.*

Other circuit courts have likewise adopted an expansive interpretation of the word "involving" as used in the ACCA's definition of a serious drug offense.  *See United States v. Whindleton*, 797 F.3d 105, 110–11 (1st Cir. 2015) (holding that an offer to sell drugs is sufficiently related to distribution to qualify as a serious drug offense, even if the defendant never possesses the drugs and the offer is not accepted); *United States v. Bynum*, 669 F.3d 880, 886 (8th Cir. 2012) (holding the same and noting that involving is an expansive term); *United States v. Winbush*, 407 F.3d 703, 708 (5th Cir. 2005) ("the term 'involving' clearly suggests that Congress intended to include other drug offenses, in addition to those already enumerated"); *United States v. King*, 325 F.3d 110, 113 (2d Cir. 2003) (construing the word involving "as extending the focus of § 924(e) beyond the precise offenses of distributing, manufacturing, or possessing" to include the offense of attempted possession with intent to sell); *United States v. Alexander*, 331 F.3d 116, 131 (D.C. Cir. 2003) (relying on the "expansive connotations" of the word involving to hold

that a conviction for attempted possession with intent to distribute qualified as a serious drug offense under the ACCA (internal quotation marks and citation omitted)).

None of these courts, however, have held that a conviction for trafficking based on the possession of a certain quantity of drugs is a serious drug offense under the ACCA. Nonetheless, they have all rejected the basic premise of the argument made by the defendant in *James*—and by Defendant in this case—that an offense cannot qualify unless it expressly requires "actual distribution or manufacture, or a specific intent to distribute or manufacture." The Fourth Circuit is the only other circuit court to have considered the specific issue that was before us in *James*. *See United States v. Brandon*, 247 F.3d 186, 192 (4th Cir. 2001). Consistent with *James*, the court in *Brandon* indicated that it would have "no difficulty concluding" that a conviction for trafficking by possession of a sufficiently large quantity of drugs "'involved' an intent to . . . distribute" because "it is natural and reasonable to assume that those who possess very large quantities of drugs intend to distribute those drugs." *Id.* *Brandon* thus concurred with our reasoning in *James* that it is not essential that the state statute of conviction include as an element a specific intent to manufacture or distribute to qualify as a serious drug offense under the ACCA. *Id.* at 190. Nevertheless, *Brandon* concluded that the 28-gram threshold required for a conviction under the North Carolina

17

trafficking statute at issue in that case—the same amount required under the Florida trafficking statute in *James* and under the Alabama trafficking statute at issue here—was simply too low a quantity of drugs to warrant an inference of the defendant's intent to distribute. *Id.* at 192–93. In short, *Brandon* agreed in principle with our approach in *James—*that a statute classifying possession of a certain quantity of drugs was sufficient to indicate an intent to distribute those drugs. *Brandon*, however, disagreed that possession of 28 grams of cocaine was sufficient to give rise to that inference.

Defendant cites decisions from the Fifth, Sixth, Ninth, and Tenth Circuits in which those courts refused to infer intent to distribute in the context of determining whether a state trafficking-by-possession conviction qualified as a "drug trafficking offense" under § 2L1.2 or a "controlled substance offense" under § 4B1.1 of the guidelines. In each of the cited decisions, the court held that such an inference was contrary to the guidelines definitions of a drug trafficking offense and a controlled substance offense, both of which are limited to offenses that *prohibit* "the manufacture, import, export, distribution, or dispensing of" a controlled substance or "the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense" it. U.S.S.G. §§ 2L1.2, 4B1.2(b). *See United States v. Lopez-Salas*, 513 F.3d 174, 180 (5th Cir. 2008) ("The Guidelines could have defined a drug trafficking offense based on the

18

quantity of drugs possessed. Instead, they require that a state prove an intent to manufacture, import, export, distribute, or dispense."); *United States v. Villa-Lara*, 451 F.3d 963, 965–66 (9th Cir. 2006) (focusing on the guidelines definition of a drug trafficking offense to conclude that the defendant's Nevada trafficking by possession conviction did not qualify); *United States v. Montanez*, 442 F.3d 485, 488 (6th Cir. 2006) ("[U]nder the Guidelines, simple possession—that is, possession without the proof beyond a reasonable doubt of the requisite intent to 'manufacture, import, export, distribute, or dispense'—is not a controlled substance offense."); *United States v. Herrera-Roldan*, 414 F.3d 1238, 1241 (10th Cir. 2005) (rejecting the Government's argument that the guidelines permit an inference of intent to distribute based on the defendant's possession of more than 50 pounds of marijuana).

Contrary to Defendant's argument, these decisions do not necessarily conflict with the result we reached in *James*, which was an ACCA case. For the most part,[12] though, they do reject the rationale underlying *Madera-Madera*. As discussed, there is general agreement among the circuits that the ACCA's

---

[12] *Herrera-Roldan* did not reject *Madera-Madera*, but found it distinguishable based on differences between the state statutes of conviction at issue in the two cases. *Herrera-Roldan*, 414 F.3d at 1242–43. Specifically, the Georgia statute addressed in *Madera-Madera* does not distinguish between simple possession and other acts, such as delivery or possession with intent to deliver, when a sufficiently large quantity of drugs is involved, giving rise to the inference that Georgia treats possession of the qualifying amount as necessarily involving an intent to distribute. *Id.* No similar inference is warranted under the Texas statute involved in *Herrera-Roldan*, which gradually increases punishment for both possession and delivery based on the quantity of drugs involved. *Id.*

19

definition of a serious drug offense is broader than the guidelines definition of a drug trafficking or a controlled substance offense because of the ACCA's use of the term "involving." Based on that broad language, we reasoned in *James* that "the Florida statute need not exactly match" the specific acts listed in the ACCA's definition. *James*, 430 F.3d at 1155. That reasoning is undisturbed by the cited decisions holding (1) that the guidelines definition of a drug trafficking and a controlled substance offense <u>does</u> require an exact match and (2) that there is no match when the state statutes of conviction require nothing more than possession of a certain quantity of drugs.

Finally, we reject Defendant's argument that *James* is no longer controlling as a result of the Supreme Court's decision in *Descamps*. As noted, the Supreme Court held in *Descamps* that "sentencing courts may not apply the modified categorical approach" to determine whether a defendant's conviction under a statute with a "single, indivisible set of elements" qualifies as a violent felony under the ACCA. *Descamps*, 133 S. Ct. at 2282. The Supreme Court had no occasion in *Descamps* to decide whether it is appropriate to infer intent to distribute based on the quantity of drugs that must be possessed in order to violate

20

a state trafficking statute, or even to consider more generally the proper interpretation or application of the ACCA's serious drug offense provision.[13]

We are thus bound under the prior precedent rule to follow our decision in *James* unless and until it is abrogated by an en banc decision or by a Supreme Court decision. Therefore, we hold in accordance with *James* that Defendant's Alabama conviction for trafficking by possession of at least 28 grams of cocaine constitutes a serious drug offense and a valid predicate under the ACCA.

## CONCLUSION

For the reasons discussed above, Defendant's sentence is **AFFIRMED.**

---

[13] For similar reasons, neither does the Supreme Court's recent decision invalidating the ACCA's residual clause in *Johnson*, nor its decision clarifying the divisibility analysis in *Mathis*, abrogate *James*.

21